DECISION AND JUDGMENT ENTRY
{¶ 1} Acuity, Inc. appeals the trial court's judgment dismissing its complaint against Trimat Construction for unpaid insurance premiums on a commercial liability policy. Acuity argues the court used the wrong legal standard to determine whether it had presented a prima facie case to support its claim for additional premiums. The insurance policy initially estimated the premiums but specified the final premium would be based upon a subsequent audit. The trial court focused upon whether Acuity established a running balance that showed all the charges to Trimat's account and the credits it received for payments made. However, the only contested issue was the accuracy of the post work audit Acuity used to assess the additional premiums to Trimat. Because the trial court's improper focus on a running balance created an unwarranted burden of proof on Acuity, we reverse.
 I. FACTS {¶ 2} During the policy periods of July 7, 2001 to July 7, 2002 and September 3, 2002 to March 3, 2003, Acuity, Inc. provided commercial liability insurance coverage to Trimat Construction for its construction operations. Under the terms of the policies, Trimat was obligated to pay insurance premiums not only for its employees, but also for subcontractors who performed work for Trimat during the policy periods.
 {¶ 3} Trimat's premium rate for its subcontractors who had their own workers compensation and liability insurance in force during a policy period was substantially less than the premium rates for its uninsured subcontractors or its own employees. To avoid paying the higher, "uninsured" premium rates for its subcontractors, Trimat had to provide Acuity with certificates of insurance for any subcontractor Trimat claimed was self-insured during a policy period.
 {¶ 4} Trimat's initial, or "deposit," premium for the insurance coverage was based on Trimat's estimate of the dollar amount of its payroll in various work classifications, i.e., the "premium basis," multiplied by premium rates specified in the insurance policy for the classifications. Neither party disputes that Trimat paid the deposit premiums for the insurance coverage.
 {¶ 5} After each policy period ended, Acuity calculated Trimat's "total earned premium." In contrast with a deposit premium, which is based on an estimate of what an insured's premium will be, a "total earned premium" is an exact, calculated amount of premium the insured is obligated to pay for the insurance coverage it received during the policy period. The "total earned premium" is based on the insured's actual payroll and the insurer's corresponding exposure for the period at issue.
 {¶ 6} The policy sets forth an audit procedure to be used to determine Trimat's total earned premium. Under the audit procedure, Acuity examined Trimat's payroll records for the construction operations Trimat performed during the coverage period. Then, for each classification of work performed during the policy period, Trimat's actual payroll amount was multiplied by the premium rate specified in the policy for that classification. The resulting amounts were added, yielding the "total earned premium" for the policy period. Trimat was entitled to a deduction from the "total earned premium" for the amount Trimat previously had been charged for its insurance coverage. The net amount was either an additional premium that Trimat owed as part of its "total earned premium" or it was a return premium to be credited to Trimat.
 {¶ 7} According to Acuity, the audits of Trimat's records revealed that Trimat's payroll during the coverage periods was higher than originally estimated and included many subcontractors who were uninsured, meaning that Trimat had to pay the higher, uninsured premium rate for the subcontractors. Acuity notified Trimat of the additional amount owed to Acuity as premiums for the coverage periods, and it provided Trimat with a list of names of the subcontractors for whom Trimat needed to submit certificates of insurance to avoid being charged the higher premium rate for the subcontractors' insurance coverage.
 {¶ 8} According to Acuity, it subsequently received certificates of insurance for some of Trimat's subcontractors, and it reduced Trimat's premium rate for those subcontractors to reflect the lower, self-insured rate. The remaining subcontractors, for whom Acuity claimed it did not receive certificates of insurance, were charged at the higher, uninsured rate. After revising Trimat's premium charges accordingly and crediting Trimat for its previous payments, Acuity notified Trimat that $7,576.08 was due and owing for the total earned premium for the two policy periods.
 {¶ 9} Trimat refused to pay, so Acuity filed an action in municipal court seeking Trimat's payment of the $7,576.08 unpaid premiums. Acuity attached to the complaint an "account summary", which itemized the charges to Trimat for premiums and other costs and listed Trimat's credits, including its payments to Acuity and the self-insured contractor credits accorded for some of Trimat's subcontractors.
 {¶ 10} At the bench trial, Acuity attempted to prove its claimed amount due through testimony of one of its auditors and by introducing various business records. The proffered business records included the audit reports prepared at the end of the two policy periods, worksheets used to produce the audit reports, and the "account summary", which detailed the charges incurred and credits received by Trimat. The court admitted the audit reports and worksheets into evidence, but refused to admit the account summary, finding the document lacked the necessary foundation under the business record exception cited by Acuity. See Evid.R. 803(6). Although the account summary was not admitted into evidence, Acuity's auditor testified about the account summary's contents, including the payments Acuity received from Trimat for the insurance coverage.
 {¶ 11} Maurice Toler, Trimat's general manager, contended at trial that Trimat paid Acuity all premiums that were due. According to Toler, Trimat did not pay the additional $7,576.08 requested by Acuity because Trimat had sent Acuity certificates of insurance for all of its subcontractors but had received self-insured credit for only some of them. Trimat did not support Toler's testimony by proffering into evidence any of the subcontractor certificates of insurance it claimed to have submitted to Acuity.
 {¶ 12} In its decision, the trial court observed that there was no dispute about the existence of a contract or an account between the parties, or that the audit process was a part of the agreement. Rather, the court noted, Trimat "merely disputes the amount [Acuity] claimed as due and owing as a result of the audit process." (Decision, p. 1). The trial court found that Acuity "acted reasonably and in good faith by adjusting [Trimat's] insurance premiums by means of the agreed upon audit process" set forth in the insurance policy provisions. (Decision, pp. 2-3). In spite of these findings, the court dismissed the case.
 {¶ 13} The court concluded that, even though the parties agreed that a contract existed, Acuity failed to prove its right to recover on the "account." The court reasoned without the excluded summary, there was no evidence to reflect Trimat's payments and credits, which the court deemed necessary to calculate any balance due and owing Acuity on the account.
 II. ASSIGNMENT OF ERROR {¶ 14} Acuity timely appealed and raises the following assignment of error:
The trial court erred as a matter of law when it held appellant had failed to prove its case because it did not prove with business records the payments made by appellee even though appellant had admitted the amount of these payments in its pleading.
 {¶ 15} Acuity contends the trial court improperly placed the burden upon Acuity to prove credits, specifically payments, on Trimat's account. Acuity argues the amount of payments Trimat made were not at issue because Acuity admitted receiving Trimat's payments in its complaint. Moreover, Trimat never contended that it did not receive credit for payments it forwarded. Rather, Trimat's dispute centered around the calculation of additional premiums in the audit and final billing process.
 III. STANDARD OF REVIEW {¶ 16} Acuity's action against Trimat is essentially one for breach of contract. The parties agree that a contract existed in which Acuity agreed to provide commercial liability insurance to Trimat in exchange for Trimat's payment of premiums calculated in accordance with the insurance policy provisions. Acuity's action involves its right, as the insurer, to recover premiums allegedly due and owing by Trimat, the insured, under the parties' contract of insurance. Under the facts of this case, resolution of the parties' dispute does not turn on whether Acuity could establish a running account balance with documentary evidence because Acuity acknowledged receiving Trimat's payments and Trimat did not contend at trial it made payments that were not credited to its account.
 {¶ 17} A determination of the burden of proof is a question of law to be decided by the court. See, Petro v. N. Coast Villas Ltd. (2000),136 Ohio App.3d 93, 99. When presented with a question of law, we apply a de novo standard of review. Goodyear Tire Rubber Co. v. AetnaCas. Surety Co., 95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 4.
 IV. ACUITY'S BURDEN {¶ 18} Contrary to the trial court's determination, the accuracy of Trimat's running account balance was not at issue in the trial. Trimat never contended that it made payments for which it received no credit. Rather, Trimat's basis for not paying the additional bills was they should not have been charged the higher premiums for uninsured workers. Trimat contested the audit process and the calculation of the final premium, not whether they got credit for payments they made toward the estimated premiums. The dispute centered on the additional amount Acuity claimed was due as a result of the audit process. Acuity had the burden to prove the audit process used the appropriate factors and that its calculations were mathematically accurate. It produced evidence going to those issues through its auditors but the trial court never addressed them because it focused upon the existence of a running account balance.
 {¶ 19} Moreover, although Trimat objected to the admission into evidence of the account summary proffered by Acuity, Trimat did not contest Acuity's testimonial evidence that summarized Trimat's payments and credits. Accordingly, even if it was necessary to establish the running balance of the account in this case, there was an evidentiary basis from which the court could calculate the "balance due and owing." To the extent Trimat may have claimed either that it had made payments that were not recorded or that it was entitled to credits it had not received, it was incumbent upon Trimat, not Acuity, to present proof of the additional payments or credits as an affirmative defense to the amount Acuity claimed was owing. See Alperin v. Feldman (1933), 14 Ohio Law Abs. 723, 1933 WL 2171.
 {¶ 20} Because the trial court erred as a matter of law in placing an improper burden upon Acuity, we sustain Acuity's assignment of error and remand this case to the trial court for an evaluation of the audit process and the additional charges that Acuity claims are due, and which Trimat disputes.
JUDGMENT REVERSED AND CAUSE REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED AND CAUSE REMANDED and that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. McFarland, J.: Concur in Judgment and Opinion.